**E-Filed 8/19/09**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| EVERFLOW TECHNOLOGY CORPORATION, | Case Number C 07-5795 JF (HRL) |
| Plaintiff, | ORDER GRANTING APPLICATIONS FOR WRITS OF ATTACHMENT AS TO DEFENDANTS PERALTA, JAMES LORO, AND MELVA LORO; DENYING APPLICATION WITHOUT PREJUDICE AS TO DEFENDANT JAMEL |
| v. | |
| MILLENIUM ELECTRONICS, INC., et al., | |
| Defendants. | |
| | [re:  docket nos. 113, 127, 132, 137] |

Plaintiff Everflow Technology Corporation ("Everflow") seeks writs of attachment with respect to assets of Defendants Jamel Enterprises, LLC ("Jamel"), Peralta Investment Group, LLC ("Peralta"), and James and Melva Loro.  Neither Jamel nor Peralta filed opposition or appeared at the hearing.  James and Melva Loro, proceeding *pro se*, filed opposition and appeared on their own behalf.  The Loros also filed a motion to strike evidentiary objections filed by Everflow.  The Court has considered the briefing submitted by the parties as well as the oral arguments presented at the hearing on August 14, 2009.  The Court will grant the Loros' motion

1  to strike Everflow's evidentiary objections, grant Everflow's applications for writs of attachment

2  as the Loros and Peralta, and deny Everflow's application as to Jamel without prejudice.

### I. BACKGROUND

4      Everflow manufactures miniature fans that are incorporated into the cooling systems of

5  personal computers during the manufacturing process.  Everflow's fans are found in computer

6  equipment sold by Sony, Samsung, Fujitsu, Hewlett Packard, and others.

7      Defendant Millenium Electronics, Inc. ("MEI") markets cooling systems to computer

8  manufacturers.  MEI purchased Everflow's fans for use in MEI's cooling systems.  Everflow has

9  sued MEI for breach of contract and common counts arising out of MEI's alleged failure to pay

10  more than $2 million owed for products purchased from Everflow, and has sued a number of

11  other entities and individuals that allegedly received $1.3 million in fraudulent transfers from

12  MEI after this action was filed.

13      On February 11, 2008, the Court granted Everflow's application for a writ of attachment

14  against MEI.  Subsequently, default was entered against MEI on July 14, 2009.  However, MEI

15  has disbursed its assets and now is an insolvent, nonfunded corporation wholly owned by the

16  Loros.  Everflow seeks to attach the assets of Jamel, Peralta, and the Loros on the theory that

17  MEI's transfers to these defendants were fraudulent under California law, and thus may be set

18  aside.

### II. LEGAL STANDARD

20      Federal Rule of Civil Procedure 64 provides that "[a]t the commencement of and

21  throughout an action, every remedy is available that, under the law of the state where the court is

22  located, provides for seizing a person or property to secure satisfaction of the potential

23  judgment."  Fed. R. Civ. P. 64(a).   The remedies available under this rule include attachment.

24  Fed. R. Civ. P. 64(b).  "The effect of Rule 64 is to incorporate state law to determine the

25  availability of prejudgment remedies for seizure of property to secure satisfaction of a judgment

26  ultimately entered."  *Post-A-Traction, Inc. v. Kelley-Springfield Tire Co.*, 112 F. Supp. 2d 1178,

27  1181 (C.D. Cal. 2000).

28      California Code of Civil Procedure § 481.010 *et seq*. specify the procedures and grounds

1  for obtaining prejudgment writs of attachment.  An order of attachment may be issued only in an

2  action for a claim of money, based upon an express or implied contract, in which said claim is for

3  a fixed or readily ascertainable amount not less than $500, exclusive of cost, interest, and

4  attorneys' fees.  Cal. Civ. P. Code § 483.010(a).  The claim may not be secured, Cal. Civ. P.

5  Code § 483.010(b), and must be a commercial claim, Cal. Civ. P. Code § 483.010(c).

6  Before an order for attachment is issued, the Court must find all of the following to be

7  true:  (1) the claim upon which the attachment is based is one upon which attachment may be

8  issued; (2) the plaintiff has established the probable validity of the claim upon which the

9  attachment is based; (3) the attachment is not sought for a purpose other than the recovery on the

10  claim upon which the attachment is based; and (4) the amount to be secured by the attachment is

11  greater than zero.  Cal. Civ. P. Code § 484.090(a).

12  The Uniform Fraudulent Transfer Act ("UFTA") extends application of the provisional

13  remedy of attachment beyond assets held by the original debtor to assets the debtor has

14  fraudulently transferred to others.  Cal. Civ. C. § 3439.07(a)(2).  The burden is on the moving

15  party to establish grounds for an order of attachment.  *Loeb and Loeb v. Beverly Glen Music,*

16  *Inc.*, 166 Cal. App. 3d 1110, 1116 (1985).

17  **III. DISCUSSION**

18  As an initial matter, the Court notes that Everflow has filed objections to much of the

19  evidence submitted by the Loros.  The Loros contend that those objections are untimely and

20  should be stricken.  The Court agrees.  Under Civil Local Rule 7-3, any reply to an opposition

21  brief must be filed and served at least fourteen days before the hearing date.  Civ. L.R. 7-3(c).

22  After this date, counsel may bring to the Court's attention decisions published after the reply was

23  filed; "[o]therwise, once a reply is filed, no additional memoranda, papers or letters may be filed

24  without prior Court approval."  Civ. L.R. 7-3(d).  Plaintiff timely filed its reply on July 31, 2009,

25  but filed the subject evidentiary objections six days later without explanation or leave of Court.

26  Accordingly, the Court declines to consider the objections and grants the Loros' motion to strike.

27  The Court has considered all of the evidence submitted by the Loros.

28  Turning to the merits of the applications, the claim against MEI clearly is one upon which

3

1   attachment may be issued, as it is a claim for money in an amount greater than $500, and is based

2   upon an unsecured commercial transaction (factor 1).  There is no evidence that the attachment is

3   sought for any purpose other than recovery of the debt owed by MEI (factor 3).  The amount to

4   be secured by the attachment is greater than zero (factor 2).

5          The applications turn on whether Everflow has established the probable validity of its

6   claim (factor 3).  Default has been entered against MEI, establishing the validity of the $2 million

7   debt.  Further, as discussed below, Everflow has established the probable validity of its claim that

8   MEI fraudulently transferred assets to Peralta and the Loros.

9          The following facts are established by Everflow's submissions and are undisputed by

10  Defendants:  as of July 2007, MEI was more than $1.1 million behind in paying for products

11  ordered and received from Everflow.  Between July and September of 2007, the parties discussed

12  ways that MEI could pay down its debt.  However, by September 2007 MEI's debt had increased

13  to more than $1.8 million.  From June through August 2007 MEI transferred $539,281.91 to

14  James Loro personally.  From October 2007 through February 2008 MEI transferred $821,031.33

15  to Peralta, a limited liability company formed in October 2007, operated out of the Loros' home,

16  and owned by them as trustees of the Loro Living Trust, an estate planning vehicle for the Loro

17  family.  Peralta subsequently transferred more than $400,000 to Melva Loro by way of a

18  withdrawal in March 2008, and paid more than $300,000 in taxes for the benefit of the Loros in

19  April 2008.

20         The Loros do not dispute that these transfers occurred, but they assert that the transfers

21  were to pay off legitimate secured obligations evidenced by four promissory notes and a fifth

22  "consolidated note" aggregating the first four notes.  The obligations allegedly were incurred

23  when (a) James and Melva Lora, in their capacity as MEI officers, accepted a promissory note in

24  lieu of salaries in 2004 and 2005, and (b) the Loro Living Trust lent more than $400,000 to MEI

25  to replace lost bank financing.  As Everflow points out, however, the salary deferral note dated

26  August 30, 2004 admittedly was drafted in 2007 and backdated to 2004.  Similarly, the two notes

27  relating to the alleged loan from the Loro Living Trust, dated August 30, 2006 and October 1,

28  2006, admittedly were drafted in 2007 and backdated to 2006.  The fourth note was an indemnity

4

fee agreement valued at $632,420, but James Loro admitted in his deposition that there was no antecedent or underlying agreement to support that note, and that the note was created to avoid tax liability.

The Loros assert that even though the notes were drafted in 2007, they merely memorialized obligations of MEI to them that arose prior to the contract dispute between MEI and Everflow.  The Loros claim that the notes were drafted and backdated on the advice of a financial consultant, Michael Callaghan, to document MEI's preexisting obligations.  The Loros contend that these preexisting obligations are supported by corporate resolutions, banking statements, accounting entries, and tax filings.

The Court concludes that the record does not support the Loros' contentions.  The Loros appear to be claiming that more than $900,000 of the suspect transfers constituted deferred compensation for 2004 and 2005.  This deferred salary allegedly is evidenced by a corporate resolution submitted by the Loros in opposition to the instant motions.  However, on its face the proffered corporate resolution authorizes approximately $240,000 in deferred compensation, not $900,000.  Moreover, the corporate resolution was not produced in discovery.  When MEI was represented by counsel, counsel produced all shareholder and director minutes since 2002, in chronological order.  There is no mention of the corporate resolution now submitted, nor is the resolution in the documents produced.  Moreover, while the documents produced by MEI's former counsel included a joint resolution dated August 9, 2004, authorizing a $4,238.79 purchase (Bates stamped 1147) and a joint resolution dated September 1, 2004, authorizing a $970 purchase (Bates stamped *next in order* 1148), the resolution at issue – which would have fallen in between – mysteriously was not produced.  MEI's annual CPA audits do not mention compensation deferral.

Similar problems exist with respect to the documentation of the alleged loan by Peralta.  The Loros submit a joint resolution dated August 26, 2006 purportedly authorizing the loan notes.  However, like the corporate resolution discussed above, this document was not produced by MEI's former counsel in discovery.  Counsel did produce an unsigned copy of a resolution to borrow money from Country Bank dated August 11, 2006 (Bates stamped 1269-75) and a joint

5

1   resolution dated October 1, 2006 authorizing a $554.80 purchase (Bates stamped *next in order*

2   1276).  The document in question – which would have fallen in between – was not produced.

3   When asked for an explanation at the hearing, Mr. Loro speculated that prior counsel

4   simply erred in failing to produce the critical corporate resolutions, or that the company hired to

5   scan the documents erroneously omitted them.  Such speculation is insufficient in the face of

6   Everflow's showing.

7   Based upon this record, the Court concludes that Everflow has established that it is likely

8   to prevail on its fraudulent conveyance claim, and therefore will grant the applications for writ of

9   attachment with respect to the assets of Peralta and the Loros.  However, Everflow has failed to

10  present any evidence with respect to the probable validity of its claim of a fraudulent transfer as

11  to Jamel, and accordingly the application as to Jamel's assets will be denied without prejudice.

12  The Court notes that the Loros' opposition brief relies heavily upon authorities addressing

13  the standard for a preliminary injunction.  Because the possibility of irreparable injury is not an

14  element that must be shown to obtain a writ of attachment, the Loros' argument that Everflow

15  has failed to show irreparable injury is not relevant.  Issuance of the writ turns on whether

16  Everflow has demonstrated the probable validity of its claims of debt and fraudulent conveyance.

17  Everflow has done so with respect to Peralta and the Loros.

18  In conjunction with its reply, Everflow submitted corrected applications for attachment of

19  the Loros' assets, specifying each statutory category of assets sought, and specifying that

20  attachment is sought up to the value of $1,310.451.  At the hearing, the Loros requested that if

21  the Court were to grant the applications they be permitted to submit applications for exemption

22  from attachment.  That request is granted; the Loros shall file any applications for exemption on

23  or before August 24, 2009.

24

25

26

27

28

6

**IV. ORDER**

(1)     The Loros' motion to strike Everflow's evidentiary objections is GRANTED;

(2)     Everflow's applications for writs of attachment are GRANTED as to Defendants Peralta and the Loros, and DENIED WITHOUT PREJUDICE as to Defendant Jamel; and

(3)     The Loros must file any applications for exemption from attachment on or before August 24, 2009.

DATED:  8/19/2009

_____
JEREMY FOGEL
United States District Judge

Case No. C 07-5795 JF (HRL)
ORDER GRANTING IN PART APPLICATIONS FOR WRITS OF ATTACHMENT
(JFLC2)

1   Copies of Order served on:

2

3   James Loro j4ldef@yahoo.com

4   Mark M Fang , Esq MFang@MarkFangAPC.com, Bshort@MarkFangAPC.com

5   Melva Loro j4ldef@yahoo.com

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. C 07-5795 JF (HRL)
ORDER GRANTING IN PART APPLICATIONS FOR WRITS OF ATTACHMENT
(JFLC2)