*E-FILED: January 11, 2013*

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| EVERFLOW TECHNOLOGY CORP., | No. C07-05795 HRL |
| Plaintiff, | **ORDER RE: DISCOVERY DISPUTE JOINT REPORT 2** |
| v. | |
| MILLENNIUM ELECTRONICS, INC.; ET AL., | **[Re: Docket No. 273]** |
| Defendants. | |

Plaintiff Everflow Technology Corporation ("Everflow") sold and delivered computer fans to defendant Millennium Electronics, Inc. ("MEI"). After MEI allegedly failed to pay for the fans, Everflow sued for breach of contract. Everflow later amended its complaint to include *pro se* defendants James and Melva Loro, MEI's principals, Nadene Loro Snapp, the chief accounting officer for MEI, Peralta Investment Group, LLC ("Peralta"), Jamel Enterprises, LLC, and a variety of other defendants, alleging that the Loros fraudulently transferred approximately $1.4 million from MEI to themselves personally and to the accounts of the co-defendants, other entities they operate. Everflow also alleges that these other entities are essentially alter egos of the Loros.

Everflow issued a subpoena on non-party Structure Law Group, LLC ("Structure"), to produce documents related to legal work it performed for since-dissolved MEI, Peralta, James Loro, Melva Loro, and Jamel Enterprises, LLC. Specifically, Everflow is interested in the formation of three entities: Peralta, Millennium Advanced Solutions ("MAS"), and Synergy Sales International; a contract for sale of assets entered into by MEI and the Loro Living Trust; five specific promissory

notes; UCC statements filed on behalf of MAS; and a specific UCC statement filed on behalf of MEI.  Everflow alleges that the subject promissory notes were issued under false pretenses, back-dated, and that the UCC statements were similarly fraudulent.  Everflow alleges that the defendants fraudulently transferred assets from MEI to the other named defendants, while it owed Everflow $1,420,897.12.

Structure objected to the subpoena on the grounds that the attorney-client privilege and the work product doctrine entitled it to withhold the information sought.  It did, however, produce a privilege log to Everflow, which indicated that it had 67 responsive documents.

In the discovery dispute currently before this court ("Discovery Dispute Joint Report #2[1]," or "DDJR #2), Everflow asks the Court to order Structure to provide the documents sought by the subpoena.  Everflow argues that 1) no attorney-client privilege exists between now-dissolved entity MEI and Structure; and 2) the documents are subject to the crime-fraud exception.  Structure responds that the Loro Living Trust, and not MEI, was its client and that because the Loro Living Trust is not dissolved, the attorney-client privilege still exits.[2]  Structure also argues that Everflow has not carried its burden in claiming entitlement to the documents by way of the crime-fraud exception and that, in any event, the exception does not apply to the documents subject to the work-product doctrine.

California law governs claims of privilege in this case because jurisdiction is based on diversity and California law supplies the rule of decision.  *See* Fed. R. Evid. 501; *Star Editorial, Inc. v. United States District Court for the Central District of California (Dangerfield)*, 7 F.3d 856, 859 (9th Cir.1993). California Evidence Code § 956 provides an exception to the attorney-client privilege "if the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit a crime or a fraud." Cal. Evid. Code § 956.  The word "fraud" in this exception to the privilege includes civil fraud.  *Dickerson v. Superior Court*, 135 Cal. App. 3d 93, 100-01 (1982).

---

[1] Although the parties titled their submission "Discovery Dispute Joint Report #1," (Dkt. 273) the parties had previously submitted another document with the same name (Dkt. 272).  The Court refers to the subject submission as Discovery Dispute Joint Report #2, or DDJR #2.
[2] The Court does note, however, that Structure represented MEI in this action, until its motion to withdraw was granted on December 22, 2008. (Dkt. 90).

2

Under Evidence Code § 956, the lawyer does not have to be aware of the fraud for the crime-fraud exception to apply. Instead, the application of the exception turns on the client's intent. *State Farm Fire & Cas. Co.*, 54 Cal. App. 4th 625 (1997).

The crime-fraud exception is "very limited," and its proponent must make two showings. *Geilim v. Sup.Ct.*, 234 Cal. App. 3d 166, 174 (1991). First, it must establish a *prima facie* case of crime or fraud. *Cunningham v. Connecticut Mut. Life Ins.*, 845 F.Supp. 1403, 1412 (S.D. Cal.1994). Second, it must establish a reasonable relationship between the crime or fraud and the attorney-client communication. *Id*. "Mere assertion of fraud is insufficient; there must be a showing the fraud has some foundation in fact." *BP Alaska Exploration, Inc. v. Superior Court*, 199 Cal. App.3d 1240 (1988). "A prima facie case is 'one which will suffice for proof of a particular fact unless contradicted and overcome by other evidence. In other words, evidence from which reasonable inferences can be drawn to establish the fact asserted, i.e., the fraud.'" *Freedom Trust*, 38 F.Supp.2d 1170, 1171 (C.D. Cal. 1999) (citations omitted).

The Court has considered the competing submissions and contentions of the parties and conducted a review of the case file (which is over four years old). Earlier in this case, the Court made a finding on the probable validity of the fraudulent transfer claim:

> The Loros do not dispute that these transfers occurred, but they assert that the transfers were to pay off legitimate secured obligations evidenced by four promissory notes and a fifth "consolidated note" aggregating the first four notes. The obligations allegedly were incurred when (a) James and Melva Lora, in their capacity as MEI officers, accepted a promissory note in lieu of salaries in 2004 and 2005, and (b) the Loro Living Trust lent more than $400,000 to MEI to replace lost bank financing. As Everflow points out, however, the salary deferral note dated August 30, 2004 admittedly was drafted in 2007 and backdated to 2004. Similarly, the two notes relating to the alleged loan from the Loro Living Trust, dated August 30, 2006 and October 1, 2006, admittedly were drafted in 2007 and backdated to 2006. The fourth note was an indemnity fee agreement valued at $632,420, but James Loro admitted in his deposition that there was no antecedent or underlying agreement to support that note, and that the note was created to avoid tax liability.
>
> The Loros assert that even though the notes were drafted in 2007, they merely memorialized obligations of MEI to them that arose prior to the contract dispute between MEI and Everflow. The Loros claim that the notes were drafted and backdated on the advice

3

of a financial consultant, Michael Callaghan, to document MEI's preexisting obligations. The Loros contend that these preexisting obligations are supported by corporate resolutions, banking statements, accounting entries, and tax filings.

The Court concludes that the record does not support the Loros' contentions. The Loros appear to be claiming that more than $900,000 of the suspect transfers constituted deferred compensation for 2004 and 2005. This deferred salary allegedly is evidenced by a corporate resolution submitted by the Loros in opposition to the instant motions. However, on its face the proffered corporate resolution authorizes approximately $240,000 in deferred compensation, not $900,000. Moreover, the corporate resolution was not produced in discovery. When MEI was represented by counsel, counsel produced all shareholder and director minutes since 2002, in chronological order. There is no mention of the corporate resolution now submitted, nor is the resolution in the documents produced. Moreover, while the documents produced by MEI's former counsel included a joint resolution dated August 9, 2004, authorizing a $4,238.79 purchase (Bates stamped 1147) and a joint resolution dated September 1, 2004, authorizing a $970 purchase (Bates stamped next in order 1148), the resolution at issue – which would have fallen in between – mysteriously was not produced. MEI's annual CPA audits do not mention compensation deferral.

Similar problems exist with respect to the documentation of the alleged loan by Peralta. The Loros submit a joint resolution dated August 26, 2006 purportedly authorizing the loan notes. However, like the corporate resolution discussed above, this document was not produced by MEI's former counsel in discovery. Counsel did produce an unsigned copy of a resolution to borrow money from Country Bank dated August 11, 2006 (Bates stamped 1269-75) and a joint resolution dated October 1, 2006 authorizing a $554.80 purchase (Bates stamped *next in order*1276). The document in question – which would have fallen in between – was not produced.

When asked for an explanation at the hearing, Mr. Loro speculated that prior counsel simply erred in failing to produce the critical corporate resolutions, or that the company hired to scan the documents erroneously omitted them. Such speculation is insufficient in the face of Everflow's showing.

(Dkt. 162, pp. 4-8). The Court found that Everflow had established that it was likely to prevail on its fraudulent conveyance claim.

As to the subject subpoena, the Court now finds that even if the responsive material were subject to the attorney-client privilege, and even if that privilege survived the dissolution of the corporate defendants, Everflow has carried its burden to show that the material is subject to the crime-fraud exception. The Court is also convinced that Everflow's need for the requested material overcomes any protection afforded by the work-product doctrine pursuant to California Code of Civil Procedure § 2018.030(b). The Court determines that denial of the requested information will unfairly prejudice Everflow in preparing its claims. *See* West's Ann. Cal. C.C.P. § 2018.030(b).

4

Structure is ordered to produce documents responsive to the subpoena no later than January 18, 2013.

**IT IS SO ORDERED.**

Dated: January 11, 2013



HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

1  **C07-05795 HRL Order will be electronically mailed to:**

2  David Ray Chamberlin:  chamberlin.calaw@gmail.com

3  James Loro:  j4ldef@yahoo.com

4  Mark M Fang , Esq:  MFang@MarkFangAPC.com

5  Melva Loro:  j4ldef@yahoo.com

6  Melva Loro:  j4ldef@yahoo.com

7  Richard John La Fleur:   rlafleur@lafleuryasin.com

8  **Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.**