*E-Filed: September 13, 2013*

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

EVERFLOW TECHNOLOGY CORP.,

Plaintiff,

v.

MILLENNIUM ELECTRONICS, INC.; ET AL.,

Defendants.

________________________________________/

No. C07-05795 HRL

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING DEFENDANT NADENE LORO SNAPPS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

**(Dkts. 288, 300)**

**INTRODUCTION**

Plaintiff Everflow Technology Corporation ("Everflow"), a Chinese Corporation, sold and delivered computer fans to defendant Millennium Electronics, Inc. ("MEI"). MEI then sold and delivered those fans to computer manufacturers in the United States. After MEI stopped paying for the fans and incurred a debt in excess of $1 million, Everflow eventually stopped shipments on remaining orders. The parties discussed ways that MEI could pay down its debt. They came up with a new agreement that involved expedited payments to Everflow and required MEI to pass along to Everflow its profits on subsequent sales of Everflow's product.

MEI made a few payments to Everflow under the new arrangement, but, at the same time, was transferring about $1.4 million to defendants James and Melva Loro, MEI's principals, and to various entities owned and purportedly controlled by the Loros. Everflow never received at least $1.4 Million of the money owed by MEI.

United States District Court
For the Northern District of California

Everflow sued MEI, James and Melva Loro ("J. Loro or "M. Loro," collectively "the Loros"), Nadene Loro Snapp ("Snapp"), who was the chief accounting officer for MEI, and a variety of other defendants, for breach of contract, fraudulent transfer, fraud, conspiracy to commit fraudulent transfer, and conspiracy to commit fraud. Everflow alleges that the Loros fraudulently transferred approximately $1.4 million from MEI to themselves personally and to the accounts of the co-defendants, other entities they operate. Everflow also alleges that these other entities are essentially alter egos of the Loros. The Loros counterclaimed for breach of contract, breach of the covenant of good faith, breach of a Third Party beneficiary Contract, negligent and intentional interference with prospective economic relations, and fraud.

The Clerk of Court has entered default against all corporate defendants and Everflow settled with another individual defendant, Michael Callaghan. J. Loro, M. Loro, and Nadene Loro Snapp are the remaining individual defendants.

Before the Court are Everflow's motion for partial summary judgment and Snapp's motion for partial summary judgment. Everflow moves for partial summary judgment on the following issues:

1) Whether MEI breached its contract with Everflow to pay for goods in the amount of at least $1,420,897.12;

2) Whether MEI fraudulently transferred assets to J. Loro and defaulting corporate defendant Peralta Investment Group, LLC. ("Peralta") in the amount of $1,360,313;

3) Whether settling defendant Callaghan, J. Loro, and M. Loro conspired with MEI to fraudulently transfer MEI assets in the amount of $1,360,313;

4) Whether MEI was an *alter ego* of J. Loro and M. Loro;

5) Whether MEI defrauded Everflow in the amount of at least $1,420,897;

6) Whether Callaghan, J. Loro, and M. Loro conspired with MEI to defraud Everflow in the amount of at least $1,360,313; and,

7) Whether the Counterclaim is a sham pleading that cannot be proved.

The Loros oppose the motion. Snapp moves for partial summary judgment on whether plaintiff may seek relief against her for the claims of alter ego, fraudulent transfer, and conspiracy. Plaintiff opposes Snapp's motion.

The Court held a hearing on the motions on February 26, 2013. All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by the undersigned. 28 U.S.C. § 636; FED. R. CIV. P. 73. Defendants appeared through counsel at the hearing and the Loros have had an attorney of record at all times relevant to these motions. Though the Loros have had an attorney of record, they have made some submissions to this court purporting to proceed *pro se*. Snapp was initially represented by counsel but proceeded *pro se* from December 2008 through February 26, 2013, the day of the hearing on her motion for summary judgment. At the hearing, the Court invited the Loros and Snapp to submit to the Court additional evidence in support of their positions, or in response to material submitted with Plaintiff's opposition to Snapp's motion. Though the Loros declined the invitation, Snapp submitted a supplemental declaration (Dkt. 325), and the Court has considered it.

Upon consideration of the moving and all responding papers, as well as the arguments of counsel at the hearing, this Court grants in part in denies in part plaintiff's motion, and denies Snapp's motion.

**BACKGROUND**

The following facts are undisputed, unless otherwise indicated: Everflow is a specialized fan manufacturer located in Taiwan. MEI was a California corporation located in San Jose that marketed cooling systems directly to computer assembly companies. J. Loro and M. Loro served as MEI's sole shareholders and directors. MEI incorporated Everflow's fans into MEI's cooling systems and sold the cooling systems to computer manufacturers. In June 2005 and thereafter, MEI

United States District Court
For the Northern District of California

would transmit Purchase Orders to Everflow requesting delivery of Everflow fans, and, in response, Everflow would ship the fans and send invoices. The business relationship seems to have proceeded without issue until 2007.

In February of 2007, MEI lost a large client and, according to J. Loro, faced "troubled liquidity" in the early part of 2007. (Fang Decl. (Dkt. 289), Ex. 6, ¶ 14.) J. Loro stated that MEI then "experienced a concomitant crunch in cash flow, resulting in invoices from suppliers, including Everflow, becoming overdue for the first time beginning on or about June 2007." (*Id.*, ¶ 13.)

Also in mid-2007, MEI prepared four back-dated promissory notes, and a fifth consolidated promissory note. The four notes purport to memorialize an indemnity fee to the Loros for acting as guarantors on a 1998 loan, deferred compensation to the Loros from 2004, and two loan agreements from 2006. The "consolidated note" purports to obligate MEI to pay the Loros a total of $1,310,451.45. (Fang Decl., Ex. 2-E, p. 3). The consolidated note was the "work product" of settling defendant Callaghan, who first joined MEI on May 18, 2007 in order to provide financial assistance. (*Id.*, Ex. 9, 114-115; Ex. 11, 123.) These notes are dated in 1998, 2004, and 2006, and purport to include security agreements. (*Id.*, Exs. 2-A, 2-B, 2-C, 2-D, & 2-E). Despite the dates appearing on the notes, however, J. Loro has admitted that the notes were conceived, drafted, backdated, and signed no earlier than April 2007. (*Id.* Ex. 11, p. 139:6-142:20; 145:22-148:9; & 153:7-154:19; Ex: 9, 48:3-16,50:14-52:1,70:8-71:8,98:25-101:19, 114:11-115:5, 119:7-24.) Aside from the admittedly back-dated notes, the Loros present no evidence to substantiate the obligations purportedly memorialized by the notes. The Loros signed the back-dated notes and eventually used them in support of a June 27, 2007 UCC-1 lien filing. (*Id.* Exs. 17, 18.)

As of July 2007, MEI was more than $1 million behind in paying for products ordered and received from Everflow. (*See* J. Loro Decl. (Dkt. 305-2), ¶ 10; Chiu Decl. (Dkt. 290), ¶ 16). MEI

United States District Court
For the Northern District of California

had transmitted purchase orders, Everflow had shipped the requested products, Everflow had sent invoices, but MEI had not paid the invoices. (Chiu Decl. (Dkt. 290), ¶¶ 12-14.) Everflow stopped shipment of its product.

Between July and September of 2007, the parties discussed ways that MEI could pay down its debt. They agreed to a new contractual arrangement whereby Everflow would receive payments on an accelerated schedule and MEI would immediately transfer the profits realized from the sale of Everflow's goods to Everflow, until the prior debt was paid off ("New Agreement"). The Loros have submitted contradictory sworn statement about whether the New Agreement was between Everflow and MEI, or between Everflow and J. Loro.

Everflow resumed shipment of the fans under the New Agreement. MEI made a few payments to Everflow under the New Agreement, however, by September 2007 MEI's debt had increased to over $1.4 million.[1] (Chiu Decl., ¶ 13, Ex. K; Fang Decl. (Dkt. 289), Ex. 7, 2:6-7, Ex. A.)

Meanwhile, from June through August 2007 MEI transferred $549,422.32[2] to J. Loro personally. (*See* Fang Decl. (Dkt. 289), ¶ 3, Ex. 1-1, 1-2.) From October 2007 through February 2008 MEI transferred $821,031.33 to Peralta, a limited liability company formed in October 2007, operated out of the Loros' home, and owned by them as trustees of the Loro Living Trust, an estate planning vehicle for the Loro family. (*Id.*, Ex. 1-3 – 1-7.) Peralta subsequently transferred more than $400,000 to Melva Loro by way of a withdrawal in March 2008, and paid more than $300,000

---

[1] Everflow submits evidence that MEI owed it $1,894,176.27. (Chiu Decl., ¶ 13, Ex. K.) For purposes of its motion for partial summary judgment against the Loros on the fraudulent transfer claim, however, it asks the Court to find that MEI's breach led to "at least" $1,420,897.12 in damages – the amount that MEI's CEO admitted that MEI owes Everflow. (*See* Fang Decl. (Dkt. 289), Ex. 7, 2:6-7, Ex. A; *see also* Order Granting Plaintiff's Application for Order of Writ of Attachment, (Dkt. 19), 4.) Plaintiff states that it will prove the exact contract amount due from MEI and the other defaulted defendants at a later prove-up hearing.

[2] In its brief, Everflow states that from June through August 2007 MEI transferred **$539,281.91** to J. Loro personally. The exhibits cited to in support of this statement indicate, however, that MEI transferred **$549,422.32** to J. Loro personally.

in taxes for the benefit of the Loros in April 2008. (*Id.*, Ex. 10, Bates # 13925, 13927, 13928, 13930, 13931.) The Loros do not dispute that these transfers occurred, or otherwise address these transactions in any of their papers.

MEI stopped doing business by the end of 2007, and dissolved in March 2010. (Fang Decl., Ex. 11, p. 67; Ex. 16.)

**LEGAL STANDARD**

A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a), (c)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of informing the court of the basis for the motion, and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits which demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In order to meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

If the moving party meets its initial burden, the burden shifts to the non-moving party to produce evidence supporting its claims or defenses. *See Nissan Fire & Marine Ins. Co., Ltd.*, 210 F.3d at 1102. The non-moving party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence that shows there is a genuine issue of material fact for trial. *See id.* A genuine issue of fact is one that could reasonably be resolved in favor of either party. A dispute is "material" only if it could affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248-49.

United States District Court
For the Northern District of California

"When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'" *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (quoting *Celotex Corp.*, 477 U.S. at 325). Once the moving party meets this burden, the nonmoving party may not rest upon mere allegations or denials, but must present evidence sufficient to demonstrate that there is a genuine issue for trial. *Id.*

## DISCUSSION

### 1. Everflow's Motion for Partial Summary Judgment

#### A. Whether MEI breached its contract with Everflow to pay for goods

In California, a party asserting a breach of contract claim must plead "(1) the contract, (2) plaintiff's performance or excuse for non-performance, (3) defendant's breach, and (4) damage to plaintiff therefrom." *Acoustics, Inc. v. Trepte Constr. Co.*, 14 Cal. App. 3d 887, 913 (Ct. App. 1971). Here, Everflow establishes these elements with competent evidence. MEI transmitted purchase orders, Everflow shipped the products requested by the purchase orders, Everflow sent invoices, but MEI failed to pay the invoices. (Chiu Decl. (Dkt. 290), ¶¶ 12-14.) Though Everflow asks to establish the exact amount of damages stemming from the breach at a future prove-up hearing, it asks the Court to rely on an admission from MEI's CEO that MEI owes at least $1,420,897.12. (*See* Fang Decl. (Dkt. 289), Ex. 7, 2:6-7, Ex. A.)

In their opposition to Everflow's motion, the Loros claim that "[w]hile the account payable balance with Everflow in 2007 exceeded $1,000,000, all, or at least some, of the account payable balance would have been paid off but for Everflow's wrongful conduct in poaching and stealing MEI's customers and eventually dr[i]v[ing] MEI out of business." (J. Loro Decl. (Dkt. 305-2), ¶ 10.)

As an initial matter, the Clerk of Court entered default against MEI on July 14, 2009. (Dkt. 146). The Loros do not represent MEI, nor can they make arguments on MEI's behalf. In any

event, J. Loro's vague and conclusory statement does not provide a defense to the breach of contract claim. J. Loro's declaration provides few, if any, specific details. While he claims that Everflow initiated direct contact with MEI's customers and solicited orders directly from them, the declaration does not include any proof whatsoever in support of the impropriety of the alleged contact, the timing of the alleged contact in relation to MEI's own admitted breach of the contract, or the circumstances surrounding the alleged communications. Further, J. Loro's position about the impropriety of any contact is squarely contradicted by an October 4, 2007 email he sent to MEI:

> Glad to hear, AMD is now working with you directly with Everflow on new orders. AMD asked my recommendations on how to proceed. *I recommended to AMD as well as their CM's: Foxconn, Celestica and PC Partner to work directly with you for new orders on the R580, R600 orders as well as future products.* If I can be of any assistance to help you with this transi[]tion, please let me know.

(Chiu Decl., Ex. 26 (Dkt. 290-2), 3) (emphasis added.)

Everflow provides competent evidence in support of its breach of contract claim and the Loros do not present admissible evidence that shows there is a genuine issue of material fact for trial. The Court finds that MEI breached its contract with Everflow to pay for goods in the amount of at least $1,420,897.12.

**B. Whether MEl fraudulently transferred assets to J. Loro and defaulting corporate defendant Peralta**

California Civil Code section 3439.04(a) states:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation as follows:
>
> (1) With actual intent to hinder, delay, or defraud any creditor of the debtor.
>
> (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor either:
>
> > (A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.

(B) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

Cal. Civ. Code § 3439.04(a).

California Civil Code section 3439.04(b) provides factors for Courts to consider in determining intent:

> In determining actual intent under [California Civil Code section 3439.04(a)] paragraph (1) . . . consideration may be given, among other factors, to any or all of the following:
>
> (1) Whether the transfer or obligation was to an insider.
>
> (2) Whether the debtor retained possession or control of the property transferred after the transfer.
>
> (3) Whether the transfer or obligation was disclosed or concealed.
>
> (4) Whether before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.
>
> (5) Whether the transfer was of substantially all the debtor's assets.
>
> (6) Whether the debtor absconded.
>
> (7) Whether the debtor removed or concealed assets.
>
> (8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.
>
> (9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.
>
> (10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred.
>
> (11) Whether the debtor transferred the essential assets of the business to a lienholder who transferred the assets to an insider of the debtor.

Cal. Civ. Code § 3439.04(b).

Here, Everflow provides ample competent evidence that MEI intended to “hinder, delay, or defraud” Everflow. First, Everflow has shown that MEI made a transfer to an insider. MEI

transferred $549,422.32 to J. Loro, one of its two sole shareholders and directors. MEI also transferred $821,031.33 to Peralta, the limited liability company operated out of the Loros' home, and owned by them as trustees of the Loro Living Trust, an estate planning vehicle for the Loro family.

Second, MEI "retained possession or control of the property transferred after the transfer." The Loros controlled MEI, and MEI effectively retained control of the money transferred to J. Loro and Peralta, another entity controlled by the Loros.

Third, the transfers and obligations appear to have been concealed. They occurred while MEI was negotiating its $1 million debt to Everflow, and they were "supported" by back-dated promissory notes but no contemporaneous documents. The "obligations" to the Loros and the Loro Living Trust were concealed until years after the obligations were purportedly incurred.

Fourth, the transfers were made under the threat of a claim, and after a substantial debt was incurred. According to J. Loro, MEI faced "troubled liquidity" in the early part of 2007 and experienced a "concomitant crunch in cash flow, resulting in invoices from suppliers, including Everflow, becoming overdue for the first time beginning on or about June 2007." The transfers to J. Loro and Peralta were made between June 2007 and February 2008.

Fifth, MEI appears to have removed or concealed assets. Peralta was formed in October 2007, after MEI had already owed Everflow in excess of $1 million. Peralta subsequently transferred more than $400,000 to Melva Loro by way of a withdrawal in March 2008, and paid more than $300,000 in taxes for the benefit of the Loros in April 2008.

Finally, MEI was insolvent or became insolvent shortly after the transfers were made. Again, MEI faced "troubled liquidity" in the early part of 2007, stopped doing business by the end of 2007, and dissolved in March 2010.

As to the second factor of a fraudulent transfer claim, Everflow has submitted unchallenged, competent evidence that MEI transferred money to the Loros and Peralta "[w]ithout receiving a reasonably equivalent value in exchange for the transfer or obligation," and that MEI was engaged in a business "for which [its] remaining assets . . . were unreasonably small in relation to the business or transaction." J. Loro has admitted that the promissory notes were back-dated and conceived of in April 2007. Though documents have been produced surrounding the time period of any purported "salary deferrals," no documents evidence any agreement to defer the Loros' salary. Peralta did not even exist until October 2007. The Loros provide no explanation for why over $800,000 was transferred to this newly-created entity, and then distributed to M. Loro personally and used to pay taxes for the benefit of the Loros.

The Loros only response to the fraudulent transfer claim is that they acted on advice of counsel. First, this purported defense was not raised as an affirmative defense. *See Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F. 3d 989, 991 (9th Cir. 2006) (party cannot oppose summary judgment by raising grounds not in issue under the pleadings). Second, an October 2, 2007 from counsel to J. Loro undermines this otherwise unsupported argument. The letter states:

> Pursuant to your request, we have prepared the necessary formation documents for Peralta Investment Group, LLC, a Delaware limited liability company (the "Company"). Copies of the formation documents are enclosed and discussed below.
>
> The Company will be formed in Delaware *for privacy reasons, not for purposes of defeating the claims of creditors of Millennium Electronics, Inc.* ("Millennium"). As I have indicated, *you should satisfy all of Millennium's creditors by entering into settlement and release agreements with each prior to distributing any of Millennium's assets to you or the Company*. If creditors' claims are not appropriately settled, you and the Company may be subject to future litigation, and the Company will not be able to protect you from such liability.

United States District Court
For the Northern District of California

(Fang Decl. (Dkt. 308), Ex. 30 (emphasis added).) Contrary to the Loros' argument, it appears that counsel alerted J. Loro to the impropriety of the subject transfers, and advised against them.

Everflow has presented competent evidence that MEI fraudulently transferred assets to J. Loro and defaulting corporate defendant Peralta in the amount of $1,370,453.65.

**C. Whether settling defendant Callaghan, J. Loro, and M. Loro conspired with MEI to fraudulently transfer MEI assets**

The elements of a civil conspiracy are 1) the formation and operation of the conspiracy, 2) the wrongful act or acts done pursuant thereto, and 3) the damage resulting. *Mosier v. Southern California Physicians Ins. Exch.*,63 Cal. App.4th 1022, 1048 (1998). Everflow has established these elements. J. Loro worked with Callaghan to prepare the back-dated promissory notes, and both J. Loro and M. Loro signed these notes. The back-dated notes supported the June 27, 2007 UCC-1 lien filing and the subsequent transfers that form the basis of the fraudulent transfer claim. The fraudulent transfers resulted in $1,370,453.65 worth of damages.

Other than to argue that the dismissal of Callaghan defeats the conspiracy claim, the Loros do not make any arguments in opposition to this claim. The dismissal of Callaghan, one of the three alleged conspirators, does not defeat the conspiracy claim.

**D. Whether MEI was an *alter ego* of J. Loro and M. Loro**

California court may impose liability through the alter ego doctrine where (1) there is such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist; and (2) if the acts are treated as those of the corporation alone, an inequitable result will follow. *Associated Vendors, Inc. v. Oakland Meat Co., Inc.*, 210 Cal. App. 2d 825, 837 (1962). To determine whether a "unity of interest" exists, courts look at, *inter alia*, 1) a failure to maintain

United States District Court
For the Northern District of California

adequate capital; 2) common directors, officers, and shareholders; 3) unauthorized diversion of corporate funds; 4) treatment by an individual of the assets of the corporation as his own; 5) the diversion of assets from a corporation by or to a stockholder or other person or entity, to the detriment of creditors; and 6) the manipulation of assets and liability between entities so as to concentrate the assets in one and liabilities in another. *See id.* Everflow has submitted ample evidence to show that a "unity of interest" exists between MEI and the Loros. MEI did not maintain adequate capital to pay its creditors, the Loros were the sole directors and shareholders of MEI, MEI made fraudulent transfers to the Loros and other entities controlled by the Loros, and MEI manipulated its assets after it had incurred substantial debt. An inequitable result would follow from treating MEI's acts as those of the corporation alone. The Loros orchestrated the dissolution of MEI after its assets were fraudulently transferred to the Loros's and other entities controlled by the Loros, leaving MEI's creditors without recourse.

In their opposition, the Loros only argue that the underlying breach of contract and fraudulent transfer claims should be resolved at trial. The Loros also allude to their "advice of counsel" defense. Everflow has produced enough unrebutted competent evidence to resolve the breach of contract and fraudulent transfer claims at the summary judgment stage, however, and the Court has already rejected the "advice of counsel" defense.

**E. Whether MEI defrauded Everflow**

The necessary elements of a claim for fraud are:

(1) Misrepresentation (false representation, concealment, or nondisclosure of a material fact);
(2) Knowledge of falsity (or "scienter");
(3) Intent to defraud, *i.e.*, to induce reliance;
(4) Justifiable reliance; and
(5) Resulting damage.

*In re Estate of Young*, 160 Cal. App. 4th 62, 79 (2008).

United States District Court
For the Northern District of California

Everflow's fraud claim is based on the fact that it resumed shipment based on the terms of the New Agreement. Under the New Agreement, Everflow would resume shipment of the fans, and MEI would pass along to Everflow MEI's profit until the entire debt was paid off. Both the Loros and Everflow agree that it would have taken several years of the payment plan under the New Agreement to satisfy MEI's debt. The misrepresentation of Everflow's fraud claim is that, while MEI promised to eventually pay off its debt through the New Agreement, it had no intention of following through on the plan. Instead, MEI's real plan was to gut itself financially and leave Everflow unpaid. In reliance on the promise of full payment of all outstanding debt under the New Agreement, Everflow resumed shipment of the fans. Though MEI made some payments according to the New Agreement, MEI's debt with Everflow actually increased, instead of decreased.

For damages, Everflow claims that its debt increased, instead of decreased, and its collection efforts were delayed. It claims damages in the full amount of the debt, reasoning that, if it had started collection efforts earlier, it may have been able to collect from MEI prior to some of the fraudulent transfers. It asks the Court to find damages in an amount of "at least $1,420,897."

The Court declines to grant summary judgment on this issue. Everflow has not carried its burden to establish damages as a result of the alleged fraud. Everflow has not established that it would have been able to collect its entire debt, but for the fact that its collection efforts were delayed. Nor has it identified the amount that its debt increased as a result of its resumed shipment. In fact, Everflow does not dispute M. Loro's contention that MEI did make several payments according to the New Agreement. The Court declines to grant summary judgment on this issue.

**F. Whether the Loros conspired with MEI to defraud Everflow**

For the same reasons the Court denies Everflows request for summary judgment on the fraud claim, the Court denies Everflow's request for summary judgment on the conspiracy to commit fraud claim. Everflow has not yet established damages for its claim.

**G. Whether the Counterclaims are legally tenable**

Everflow moves for summary judgment on the counterclaims filed by J. Loro and M. Loro on the basis that they are legally untenable, and are sham pleadings. After MEI dissolved and the Clerk of Court entered default against it, the Loros filed counterclaims on their own behalf, on the premise that the New Agreement was between Everflow and J. Loro personally. The Loros alleged that Everflow breached that contract, violated the covenant of good faith and fair dealing under the contract, and interfered with J. Loro's prospective economic relations. The Loros also alleged that J. Loro was damaged as a third-party beneficiary by Everflow's breach of the New Agreement, and that the breach of the New Agreement constituted fraud. The counterclaim for damage as a third-party beneficiary was already dismissed (*see* Dkt. 227), leaving only the claims that depend on J. Loros being a party to the New Contract.

In support of its motion, Everflow points out that J. Loro has submitted several statements that wholly contradict each other on the issue of whether the New Agreement was between Everflow and MEI, or between Everflow and J. Loro. Indeed, J. Loro filed a declaration in support of an opposition to plaintiff's motion for additional writs of attachment on July 27, 2009 and stated that "MEI negotiated a repayment plan ("Repayment Plan") with Everflow" (Dkt. 150-1); he then filed his counterclaim, which states that "James Loro agreed to enter into a new contractual arrangement with Everflow regarding the shipment of product" (Dkt. 288); finally, he filed a declaration in support of his opposition to the current motion for partial summary judgment and stated that "MEI and Everflow agreed to enter into a new contractual arrangement with Everflow regarding the shipment of product." (Dkt. 305-2) The sworn statements indicate that the New Agreement was between MEI and Everflow, which is fatal to J. Loro's counterclaims.

As to the counterclaims purportedly brought on behalf of M. Loro, none of the counterclaims make a single factual allegation about M. Loro. In fact, the counterclaims do not mention her at all, except to state that they are brought on her behalf.

Neither of the Loros present any legal arguments or evidence that could save their counterclaims. Accordingly, the Court grants summary judgment in favor of Everflow on the counterclaims filed by the Loros.

**2. Snapp's Motion for Partial Summary Judgment**

Snapp moves for partial summary judgment on the claims asserted against her. While she states that she had no involvement with the events that gave rise to this lawsuit, Everflow comes back with enough admissible evidence to show that there are genuine issues of material fact that preclude summary judgment. Snapp's motion for partial summary judgment is denied.

**3. Objections to Evidence**

Though Everflow objects to the exhibits attached to J. Loro's declaration in support of his opposition to the motion for summary judgment, and to some of the statements made in the declaration, the Court did not rely on these exhibits or statements for this order. The court therefore declines to rule on the evidentiary objections.

**ORDER**

Based on the foregoing, the Court denies Snapp's motion for partial summary judgment. The Court grants in part, and denies in part Everflow's motion for partial summary judgment. The Court grants summary judgment on the following matters:

1) MEI breached its contract with Everflow to pay for goods in the amount of at least $1,420,897.12;

2) MEI fraudulently transferred assets to J. Loro and defaulting corporate defendant Peralta in the amount of $1,370,453.65;

2) J. Loro and M. Loro conspired to fraudulently transfer MEI assets;

3) MEI was an *alter ego* of J. Loro and M. Loro;

4) Plaintiff shall recover at least $1,370,453.65 with interest from J. Loro and M. Loro; and

5) The counterclaims filed by the Loros fail as a matter of law.

SO ORDERED.

Dated: September 13, 2013

HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

United States District Court
For the Northern District of California

**C07-05795 HRL Order will be electronically mailed to:**

David Ray Chamberlin chamberlin.calaw@gmail.com

Mark M Fang , Esq MFang@MarkFangAPC.com

Melva Loro j4ldef@yahoo.com

Richard John La Fleur rlafleur@lafleuryasin.com

**C07-05795 HRL Order will be mailed to:**

Nadene Loro Snapp
761 Eschenburg Drive
Gilroy, CA 95020

Jonathan C. Do
Fusion Law Group, APC
300 S First Street
Suite 320
San Jose, CA 95113

William Gerard Short
Mark Fang, Attorndy-at-Law, APC
400 Camarillo Ranch Road
Suite 203
Camarillo, CA 93012

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.**

United States District Court
For the Northern District of California