**United States District Court**
For the Northern District of California

**\*E-Filed: September 30, 2014\***

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| EVERFLOW TECHNOLOGY CORP., | No. C07-05795 HRL |
| Plaintiff, | **ORDER THAT CASE BE REASSIGNED TO A DISTRICT JUDGE** |
| v. | |
| MILLENNIUM ELECTRONICS, INC.; ET AL., | **REPORT AND RECOMMENDATION** |
| Defendants. | **[Re: Docket No. 353]** |

Everflow Technology Corp. brings suit against several defendants, including Jose L. Alvarez and JDC Partners, LLC. Plaintiff alleged two counts of fraudulent transfer under California Civil Code § 3439.04 and conspiracy to fraudulently transfer assets against Alvarez and JDC Partners. In November 2011, District Judge Jeffrey S. White assigned this case to the undersigned for all proceedings, including trial. Dkt. No. 260. However, Alvarez and JDC Partners have not consented to having all matters proceed before a magistrate judge.

Plaintiffs move for default judgment against Alvarez and JDC Partners. Dkt. No. 353. The motion was deemed suitable for determination without oral argument, and the July 8, 2014 hearing was vacated. Civ. L.R. 7-1(b). For the reasons stated below, the undersigned recommends that the motion be GRANTED.

**BACKGROUND**

Plaintiff, a Chinese Corporation, sold and delivered computer fans to Defendant Millennium Electronics, Inc. ("MEI"). MEI then sold and delivered those fans to computer manufacturers in the

United States.  After MEI stopped paying for the fans and incurred a debt in excess of $1 million, Plaintiff eventually stopped shipments on remaining orders.  The parties discussed ways that MEI could pay down its debt.  They came up with a new agreement that involved expedited payments to Everflow and required MEI to pass along to Plaintiff its profits on subsequent sales of Plaintiff's product.  MEI made a few payments to Plaintiff under the new arrangement, but, at the same time, was transferring about $1.4 million to defendants James and Melva Loro, MEI's principals, and to various entities owned and purportedly controlled by the Loros.  Plaintiff never received at least $1.4 million of the money owed by MEI.

The Second Amended Complaint ("SAC") (the operative complaint) asserts claims against MEI, James and Melva Loro, Nadene Loro Snapp, Loroco Sales Incorporated, Jamel Enterprises, LLC, Jamel Enterprises dba Millenium Advanced Solutions, Peralta Investment Group, LLC, Michael Callaghan, Alvarez, JDC Partners, and Xtreme Natural Stone, LLC for: (1) breach of contract; (2) common count—book account; (3) common count—account stated; (4) common count—for work, labor and materials; (5) fraud; (6) alter ego; (7) unfair competition in violation of California Business and Professions Code § 17200; (8) fraudulent transfer (count 1); (9) fraudulent transfer (count 2); and (10) conspiracy.

In ruling on a motion for summary judgment, the undersigned has previously found: (1) MEI breached its contract with Plaintiff to pay for goods in the amount of at least $1,420,897.12; (2) MEI, in violation of the Uniform Fraudulent Transfers Act ("UFTA"), transferred to James Loro and Peralta Investment Group sums totaling $1,370,453.65; (3) James Loro and Melva Loro conspired to fraudulently transfer MEI assets; (4) MEI was the alter ego of the Loros; and (5) Plaintiff is entitled to recover at least $1,370.453.65 with interest from the Loros.  Dkt. No. 333, at 16-17.

1    In regards to Alvarez and JDC Partners, Plaintiff has submitted evidence showing that the

2   Loros transferred the assets received from MEI to Alvarez and JDC Partners directly, and through

3   Peralta Investment Group, in order to hinder, delay, and default Plaintiff in its efforts to collect on

4   lawful debts.  The Loros accomplished this by transferring to Alvarez and JDC Partners substantial

5   amounts of money and real property "for less than equivalent value" in return.

6    Alvarez is a real estate investor and hard money lender based in Phoenix, Arizona.  Mot.,

7   Exh. 2 [Alvarez Depo.], at 134.  JDC Partners is a limited liability company, of which Alvarez was

8   the sole proprietor.  Mot., Exh. 21.  JDC Partners has no operating agreement.  *Id.*

9

10    James Loro claims that he reached a 2006 agreement with Alvarez pursuant to which

11   Alvarez would provide a $1,090,000 credit line to the Loros to "help with some personal financing

12   and/or buy real estate."  Mot., Exh. 3 [James Loro Depo.], at 324-25.  Alvarez testified that he

13   delivered $1.3 million[1] to the Loros in August 2007.  Mot., Exh. 2, at 164-65.  James Loro described

14   the terms as 13% over 24 months.  Mot., Exh. 3, at 308-09.  Pursuant to the loan agreement, the

15   Loros "pledged" their multi-million dollar residence located in San Martin as security for the loan.

16   *Id.* at 308.

17    The Loros claim they used $990,000 of the loan from Alvarez to invest in real estate.  *Id.* at

18   341-42.  In 2008, the Loros purchased five Arizona rental properties from JDC Partners.  JDC

19   Partners had purchased the rental properties out of foreclosure and refurbished them, before selling

20   them to the Loros.  The Loros obtained separate bank financing for the purchase of each of the

21   rental properties.  At each closing for the rental properties, the Loros received cash back from JDC

22   Partners equaling their down-payment, in addition to some of JDC Partners' profit in having flipped

23   the real property.  Mot., Exh. 2, at 124-29, 178; Exh. 3, at 349-51, 359-60.

24    In October 2008, the Loros quitclaimed the five properties back to Alvarez.  The Loros

25   remained liable for—and eventually defaulted on—the bank mortgages, but they gave their

26   combined equity of $133,000 in the properties to Alvarez.  Mot., Exh. 3, at 423-29.  Also in October

27   2008, the Loros quitclaimed their San Martin home to JDC Partners.  Mot., Exh. 4.  In June 2008,

28

---

[1] Earlier, Alvarez inconsistently described the loan amount as $1.23 million.  Mot., Exh. 2, at 91.

1  the Loros valued the San Martin residence at $2.775 million and their mortgage at $1.568 million.

2  Mot., Exh. 5-3.

3      During 2008, the Loros transferred to Alvarez assets totaling $2,194,318.79, in the form of

4  cashier checks, cash, Schwab checks, the San Martin residence, and equity in the five Arizona

5  rentals.  Mot., Exh. 3, at 423-29, 433-35; Exhs. 4, 5-3, 6, 7.  In return, since 2008, Alvarez has

6  transferred (directly and through JDC Partners) to Loros assets totaling $435,091.40 in the form of a

7  cashier check and JDC Partners checks.  Mot., Exhs. 8-14.  Accordingly, the net value of assets

8  passing from Loros to Alvarez and JDC Partners was $1,759,227.39 during 2008.  In January 2008,

9  the Loros' personal bank accounts with Bank of America totaled $1,019,965.80.  Mot., Exh. 15-1.

10  In December 2008, after these transfers to Alvarez and JDC Partners, the Loros' personal accounts

11  totaled $36,464.56.  Mot., Exhs. 16-1, 16-3.

12      Alvarez and JDC Partners were served with the SAC and amended Summons on August 9,

13  2011.  Dkt. Nos. 237, 238.  They filed no answer or responsive pleading.  Upon Plaintiff's motion,

14  the Clerk entered default against both Alvarez and JDC Partners on September 9, 2011.  Dkt. Nos.

15  247, 248.  Plaintiff now moves for default judgment against Alvarez and JDC Partners.  Dkt. No.

16  353.  Plaintiff seeks $1,370,453.65.

17                    **LEGAL STANDARD**

18      Generally, a party is in "default" if the party has failed to plead or "otherwise defend" in a

19  timely fashion to a pleading seeking affirmative relief against the party. Fed. R. Civ. P. 55(a).

20      After entry of default by the Clerk, courts are authorized to grant default judgment in their

21  discretion. *See* Fed. R. Civ. P. 55; *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). A court

22  may consider the following factors in deciding whether to enter default judgment: (1) the possibility

23  of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of

24  the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning

25  material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy

26  underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*,

27  782 F.2d 1470, 1471-72 (9th Cir. 1986).  In considering these factors, all factual allegations in the

28

United States District Court
For the Northern District of California

4

plaintiff's complaint are taken as true, except those relating to damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

**DISCUSSION**

All of the *Eitel* factors favor entry of default judgment here.

**A. Sufficiency of Plaintiff's Claims**

Plaintiff's claims have merit, and all are sufficiently pled.  Plaintiff asserts fraudulent transfer of assets (claims 8 and 9) and conspiracy to fraudulently transfer assets (claim 10) against Alvarez and JDC Partners.  Each will be addressed in turn.

*1. Fraudulent Transfer of Assets*

California Civil Code § 3439.04(a) provides:

A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation as follows:
(1) With actual intent to hinder, delay, or defraud any creditor of the debtor.
(2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor either:
(A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.
(B) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

Fraudulent intent may be inferred from the circumstances surrounding the transfer of the debtor's assets through the presence of the following "badges of fraud":

(1) Whether the transfer or obligation was to an insider.
(2) Whether the debtor retained possession or control of the property transferred after the transfer.
(3) Whether the transfer or obligation was disclosed or concealed.
(4) Whether before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.
(5) Whether the transfer was of substantially all the debtor's assets.
(6) Whether the debtor absconded.
(7) Whether the debtor removed or concealed assets.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

(8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.

(9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.

(10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred.

(11) Whether the debtor transferred the essential assets of the business to a lienholder who transferred the assets to an insider of the debtor.

Cal. Civ. Code § 3439.04.  "The presence of a single badge of fraud may spur mere suspicion; the confluence of several can constitute conclusive evidence of actual intent to defraud, absent 'significantly clear' evidence of a legitimate supervening purpose."  *In re Acequia, Inc.*, 34 F.3d 800, 806 (9th Cir. 1994) (internal quotation marks omitted).  The Uniform Fraudulent Transfer Act ("UFTA") provides that judgment may be entered against the transferees of the asset and the "person for whose benefit the transfer was made."  Cal. Civ. Code § 3439.08(b); *Renda v. Nevarez*, 223 Cal. App. 4th 1231, 1237 (2014) (court to consider "the principles of law and equity" in exercising this discretion).

Plaintiff alleges that the Loros "transferred, directly or indirectly, assets to Peralta, Jamel, Alvarez, JDC, and Xtreme . . . , J. Loro and M. Loro were insolvent as defined by Civil Code section 3439.02(a) in that the total of their outstanding, matured debt obligations exceeded their assets, and/or by these transfers themselves, J. Loro and M. Loro rendered themselves insolvent.  Further, in making these transfers, J. Loro and M. Loro had the actual intent to hinder, delay, or defraud Everflow from collecting on its lawful debts."  SAC ¶ 87.

The Loros' actions carried many of these "badges of fraud."  In regards to the first badge of fraud, "insider" means "a general partner" of the debtor in the insolvency context.  11 U.S.C. § 101(A)(ii); Cal. Civ. Proc. Code § 1800(a)(3)(A)(iii).  In at least five instances, the Loros were in partnership with Alvarez and JDC Partners in the purchase of the Arizona properties.  This joint venture involved actual sharing in the immediate "transaction profit" arising from the sale of the individual property from JDC Partners and the planned subsequent profit when later selling the property at an increased price.  Mot., Exh. 2, at 124-29, 178; Exh. 3, at 349-51, 359-60.  In March

1   2008, the Loros, through Peralta Investment Group, wrote a $10,100 check to "JDC Remodeling."[2]

2   Mot., Exh. 22.  On the check was the notation "1630 W. Garfield Repairs."  *Id.*  The Loros did not

3   buy this Phoenix home from JDC Partners until July 2008.  Mot., Exh. 17-1.  The Loros were

4   contributing to the refurbishment of the residence for its eventual sale for profit.  In addition,

5   Alvarez testified about another property that the Loros "[went] in investment with [JDC Partners]"

6   and on which Alvarez eventually paid the Loros a profit.  Mot., Exh. 2, at 125-26.  These

7   transactions between the Loros and Alvarez (and their wholly owned entities) reflect a "general

8   partnership," or two or more persons engaged in a business for profit (i.e. property flipping).  *See* 26

9   U.S.C. § 761(a) (definition of "partnership").

10       In regards to the third badge of fraud, there is no existing written communication between

11   the Loros and Alvarez and JDC Partners, despite the transfer between them of cash and assets

12   totaling over $5 million.  Although the Loros and Alvarez sent emails to each other, James Loros

13   deleted these emails, purportedly "by mistake."  Mot., Exh. 3, at 310-11.  The loan agreement is also

14   no longer in existence.  According to Alvarez, it was shredded.  Mot., Exh. 2, at 91-92.  According

15   to James Loro, it was never delivered.  Mot., Exh. 3, at 304-06.

16       In regards to the fourth badge of fraud, the Loros knew that Plaintiff had discovered, in early

17   2008 through document subpoena production in this action, the transfer significant MEI assets to

18   themselves and to their wholly owned entities (Peralta Investment Group and Jamel).  In August

19   2008, Attorney Mark Fang, counsel for Plaintiff, called Attorney Mark Figueiredo, counsel for MEI,

20   to let him know that Plaintiff would seek leave to amend the complaint to add Alvarez and his

21   closely held companies.  The timing of the Loros' decision to quitclaim to Alvarez all of their

22   Arizona property and quitclaim to JDC Partners the San Martin property in October 2008 is suspect.

23       In regards to the fifth badge of fraud, the transfers effectively drained the Loros of all cash

24   not otherwise protected in retirement accounts.  The cash held in the Loros' bank accounts totaled

25   $1,019,965.80 in January 2008.  Mot., Exh. 15-1.  By December 2009, this amount was reduced to

26   $36,464.56.  Mot., Exhs. 16-1, 16-3.  In 2008, they also quitclaimed to Alvarez and JDC Partners all

27   six of their disclosed Arizona and California real properties.

28

---

[2] "JDC Remodeling and Home Repair" is a dba for Alvarez.  Mot., Exh. 2, at 18-19.

United States District Court
For the Northern District of California

1    In regards to the seventh badge of fraud, the Loros attempted to remove their cash and real

2    property assets out of reach of Plaintiff by transferring them to Alvarez and JDC Partners, as

3    discussed above.

4    In regards to the eighth badge of fraud, the Loros gave Alvarez and JDC Partners a total of

5    $2,194,318.79, and received back only $435,091.40.  The Loros gave these assets to Alvarez "with

6    the assumption, at some point in time, when [Alvarez] sold the property, [the Loros] could try to

7    settle up in some way."  Mot., Exh. 3, at 334.

8    In regards to the ninth badge of fraud, the Loros had over $1 million in the bank at the

9    beginning of 2008, but after multiple transfers to Alvarez and JDC Partners, ended the year with

10   approximately $36,000 in cash.  Through their alter ego, MEI, the Loros also owed Plaintiff at least

11   $1,420,897.12 at the beginning of 2008.  These transfers to Alvarez and JDC Partners increased

12   their insolvency.

13   In regards to the tenth badge of fraud, the Loros' alter ego MEI built up a "substantial debt"

14   to Plaintiff in 2007 giving rise to this claim and action.  MEI's accounts payable to Plaintiff totaled

15   at least $1,420,897.12.  Dkt. No. 333, at 16.  Shortly after this debt was incurred, the Loros

16   transferred away their cash and real property.

17   Accordingly, Plaintiff has sufficiently pled fraudulent transfer of assets against Alvarez and

18   JDC Partners.

19           *2.   Conspiracy to Fraudulently Transfer Assets*

20   The elements of civil conspiracy are: (1) formation and operation of the conspiracy; (2)

21   wrongful act(s) done pursuant thereto; and (3) resulting damage.  *Mosier v. S. Cal. Physicians Ins.*

22   *Exch.*, 63 Cal. App. 4th 1022, 1048 (1998).  "[T]he requisite concurrence and knowledge may be

23   inferred from the nature of the acts done, the relation of the parties, the interests of the alleged

24   conspirators, and other circumstances.  Tacit consent as well as express approval will suffice to hold

25   a person liable as a coconspirator."  *Wyatt v. Union Mortg. Co.*, 24 Cal. 3d 773, 785 (1979) (internal

26   quotation marks and citation omitted).

27   Plaintiff has alleged that "MEI, J. Loro, M. Loro, N. Loro, Peralta, Jamel, Callaghan,

28   Alvarez, JDC, and Xtreme agreed, and knowingly and willfully conspired between themselves to

8

United States District Court
For the Northern District of California

hinder, delay and defraud in the collection of Everflow's claim against MEI. . . . [U]nder this conspiracy, J. Loro, M. Loro, Peralta, Jamel, Callaghan, Alvarez, JDC, and Xtreme agreed to transfer J. Loro's and M. Loro's bank account funds and other assets to Peralta, Jamel, Alvarez, JDC, Xtreme, and others so that those funds would not be available to pay lawful claims. . . . As a proximate result of the wrongful acts herein alleged, Everflow has been damaged in that MEI was emptied of assets to attach and eventually levy against, as was Peralta, Jamel, J. Loro and M. Loro." SAC ¶¶ 89, 91, 93.

The Loros transferred a net total of $1,759,227.39 to Alvarez and JDC Partners in 2008, $1,420,897.12 of which the Loros owed Plaintiff.[3]  As explained above, these transfers violated the UFTA.  As a result of the transfers, Plaintiff was harmed because no MEI or Loro assets remained to satisfy MEI's debt to Plaintiff.  By authorizing and/or participating in this tortious conduct, the Loros, Alvarez, and JDC Partners each conspired together to make the fraudulent transfer.

Accordingly, Plaintiff has sufficiently pled conspiracy to fraudulently transfer assets against Alvarez and JDC Partners.

**B.  Remaining *Eitel* factors**

There can be no dispute over material facts because all liability-related factual allegations are taken as true.  Moreover, Plaintiff would be prejudiced if default is not entered because Alvarez and JDC Partners have refused to participate in this action since they were joined in the action over two years ago, and Plaintiff has no other avenue for relief.  There is no evidence that their failure to appear and defend themselves is due to excusable neglect.  While the Federal Rules of Civil Procedure favor judgments on the merits, their refusal to participate in this litigation renders such a decision impossible.  Finally, Plaintiff requests $1,370,453.65.  Although this is a substantial sum of money, this amount is approximately half of the amount sought in *Eitel*.  *See Eitel*, 782 F.2d at 1472 (seeking almost $3 million in damages).  In addition, the SAC put Defendants on notice that a substantial amount of money was at issue in this action.  *See* Dkt. No. 222, at 17 (demanding $2,040,562.96 in damages).  Accordingly, all of the *Eitel* factors weigh in favor of granting Plaintiff's application.

---

[3] The Court has found that MEI is the alter ego of the Loros.  Dkt. No. 333, at 17.  Therefore, what MEI owed to Everflow for breach of contract, the Loros owed to Everflow.

9

**C.  Relief Requested**

Plaintiff seeks $1,370,453.65.  In the order granting in part and denying in part Plaintiff's motion for partial summary judgment, this Court has found that MEI fraudulently transferred assets to James Loro and Peralta Investment Group in the amount of $1,370,453.65, and Plaintiffs are entitled to recover $1,370,453.65 with interest from the Loros.  Dkt. No. 333, at 16-17.  As explained above, the Loros fraudulently transferred a net total of $1,759,227.39 to Alvarez and JDC Partners.  Accordingly, Plaintiff is entitled to recover $1,370,453.65 against Alvarez and JDC Partners.

## CONCLUSION

Based on the foregoing, the court ORDERS that this case be reassigned to a district judge. The undersigned RECOMMENDS that Plaintiffs' motion be granted.  The undersigned further RECOMMENDS that judgment is entered against Jose L. Alvarez and JDC Partners, LLC in the amount of $1,370,453.65.  Pursuant to Federal Rule of Civil Procedure 72(b), any party may serve and file objections to this Report and Recommendation within fourteen days after being served.

**IT IS SO ORDERED.**

Dated: September 30, 2014

_____
HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1  **C07-05795 HRL Notice will be electronically mailed to:**

2  David Ray Chamberlin      chamberlin.calaw@gmail.com

3  Jonathan C. Do      jonathando@comcast.net

4  Kathryn E. Barrett      keb@svlg.com, amt@svlg.com, caf@svlg.com

5  Mark M Fang , Esq      MFang@MarkFangAPC.com

6  Melva Loro      j4ldef@yahoo.com

7  Richard John La Fleur      rlafleur@lafleuryasin.com

8  **Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.**

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28